# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERNESTO JOSE CHAVEZ RODRIGUEZ, | : | Civil No. 3:16-cv-2531 |
| | : | |
| | : | (Judge Mariani) |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES BUREAU OF PRISONS, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

## I.   Background

Plaintiff Ernesto Jose Chavez Rodriguez ("Rodriguez"), an inmate who, at all relevant

times, was housed at the United States Penitentiary in Allenwood, Pennsylvania,

("USP-Allenwood"), commenced this action pursuant to *Bivens*[1] and the Federal Tort Claims

Act ("FTCA")[2]. (Doc. 1). Named as Defendants are the Federal Bureau of Prisons ("BOP"),

Michael Magyar, L.J. Oddo, James Potope, Brian Buschman, Charles Craig, and Thomas

Wickham. (Docs. 1, 28). Rodriguez alleges that he underwent carpal tunnel surgery on

---

[1]   *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978).

[2]   Rodriguez does not specifically mention the Federal Tort Claims Act, but he alleges negligence by Defendants with respect to medical care at USP-Allenwood.

November 4, 2016 and, from that date through December 16, 2016, he only received four days of Tylenol 3 pain medication, was not provided guidance on proper wound care, and never received any post-surgery treatments which caused in his hands and fingers to become swollen. (*Id.*).

Presently pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 49). The motion is ripe for disposition, and for the following reasons, the Court will grant the motion for summary judgment.

## II.    Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a

2

genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between

3

the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Statement of Undisputed Facts[3]

Rodriguez is currently housed at the United States Penitentiary, Coleman II, in

Coleman, Florida. (Doc. 57, Statement of Material Facts ("SMF"), ¶ 1; Doc. 58-3, pp. 3-6,

Declaration of Michael Magyar ("Magyar Decl."), ¶ 4). Rodriguez was previously housed at

USP-Allenwood from August 31, 2015 through December 27, 2016. (SMF ¶ 2; Magyar

Decl. ¶¶ 6, 7).

### A.   Facts Regarding Defendant Magyar

Defendant Magyar is employed by the Federal Bureau of Prisons as the Assistant

Health Services Administrator ("AHSA"). (SMF ¶ 3; Magyar ¶ 2). As AHSA, Defendant

Magyar is responsible for supervising staff within the Health Services Department. (SMF ¶

---

[3]    Rodriguez provides no response to ¶¶ 1-4, 6, 8, 9, 13-18, 20-29, 32, 34-46, 54-57, 59-63 of Defendants' statement of material facts. (*See* Doc. 63). Therefore, as authorized by Local Rule 56.1, the Court will admit as uncontroverted these statements of facts submitted by Defendants. *See* Local Rule 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."). With respect to ¶¶ 5, 7, 10-12, 19, 30, 31, 33, 47-53, 58, 64-67 of Defendants' statement of material facts, Rodriguez neither admits nor denies the statements, but instead provides comments to the statements. (*See id.*). To the extent that Rodriguez's fact statements tangentially relate to Defendants' fact statements, the Court cites to both statements of facts. (Docs. 57, 63).

4

4). Defendant Magyar's duties are limited to administrative functions and do not include medical care, even though he is a certified paramedic. (SMF ¶ 5). Rodriguez contends that Defendant Magyar signed the release of the medical hold on him, resulting in his transfer to another institution. (Doc. 63 ¶ (A)(1)). Defendant Magyar provides limited medical care during an emergency situation. (SMF ¶ 6). Defendant Magyar states that routine medical care is provided by the Health Service Department medical staff who are supervised by the institution's Clinical Director. (SMF ¶ 7). Rodriguez contends that Defendant Magyar was responsible for ensuring that inmates in the SHU received proper medical care during PA Craig's absence. (Doc. 63 ¶ (A)(2)). Defendant Magyar denies that he violated Rodriguez's constitutional rights. (SMF ¶ 8). Defendant Magyar was not involved in Rodriguez's medical care and the medical records reveal that Defendant Magyar did not have any involvement in Rodriguez's medical care. (SMF ¶ 9).

The parties dispute whether Rodriguez contacted Defendant Magyar regarding the medical issues in his complaint and filing administrative remedies with respect to his claims. (SMF ¶ 10; Doc. 63 ¶¶ (A)(3), (4)). Defendant Magyar maintains that if he was contacted by Rodriguez concerning any of the medical issues in his complaint, Defendant Magyar would have referred him to the appropriate medical personnel for medical treatment and follow-up care. (SMF ¶ 11). Defendant Magyar further states that he was not involved in any attempts by Rodriguez to file administrative grievances. (SMF ¶ 12).

5

## B.    Facts Regarding Defendant Oddo

Defendant Oddo is currently employed by the BOP as the Complex Warden for the

Federal Correctional Complex Allenwood, in White Deer, Pennsylvania. (SMF ¶ 13; Doc.

58-3, pp. 7-9, Declaration of L. J. Oddo ("Oddo Decl."), ¶ 1). As the Complex Warden,

Defendant Oddo is responsible for ensuring the overall security and orderly operation of the

institution. (SMF ¶ 14). Defendant Oddo has several Associate Wardens and Department

Heads who supervise various functional areas within the institution. (SMF ¶ 15). Defendant

Oddo states that a Health Services Administrator ("HSA") oversees medical staff and is

responsible for overseeing medical issues within the institution. (SMF ¶ 16). Defendant

Oddo states that routine medical care is provided by the Health Services Department

medical staff who are supervised by the institution's Clinical Director. (SMF ¶ 17).

Defendant Oddo was not involved in Rodriguez's medical care and the medical

records reveal that he did not have any involvement in Rodriguez's medical care. (SMF ¶

18). The parties dispute whether Rodriguez contacted Defendant Oddo regarding the

medical issues in his complaint and filing administrative remedies with respect to his claims.

(SMF ¶ 19; Doc. 63 ¶ (B)(1)). Defendant Oddo maintains that if he was contacted by

Rodriguez concerning any of the medical issues in his complaint, Defendant Oddo would

have referred him to the appropriate medical personnel for medical treatment and follow-up

care. (SMF ¶ 19). Defendant Oddo further states that he was not involved in any attempts

6

by Rodriguez to file administrative remedies. (SMF ¶ 20).

### C.    Facts Regarding Defendant Potope

Defendant Potope is currently employed by the BOP as the Health Services Administrator for the Allenwood Federal Correctional Institution. (SMF ¶ 21; Doc. 58-3, pp. 10-12, Declaration of James Potope ("Potope Decl."), ¶ 1). As the HSA, Defendant Potope is responsible for supervising staff within the Health Services Department. (SMF ¶ 22). Defendant Potope's duties are limited to administrative functions and he does not provide medical care, even though he is a certified paramedic. (SMF ¶ 23). Defendant Potope does provide limited medical care during an emergency situation. (SMF ¶ 24). Defendant Potope states that routine medical care is provided by the Health Services Department medical staff who are supervised by the institution's Clinical Director. (SMF ¶ 25).

Defendant Potope was not involved in Rodriguez's medical care and the medical records reveal that he did not have any involvement in Rodriguez's medical care. (SMF ¶ 26). Defendant Potope states that if he was contacted by Rodriguez concerning any of the medical issues in his complaint, Defendant Potope would have referred him to the appropriate medical personnel for medical treatment and follow-up care. (SMF ¶ 27). Defendant Potope states that he was not involved in any attempts by Rodriguez to file administrative remedies. (SMF ¶ 28).

### D.    Facts Regarding Defendant Wickham

Defendant Wickham is currently employed as a Physician Assistant at USP-Allenwood. (SMF ¶ 29; Doc. 58-3, pp. 29-30, Declaration of Thomas Wickham ("Wickham Decl."), ¶ 1). Defendant Wickham is aware that Rodriguez claims that he administered medications to him in the Special Housing Unit ("SHU") and failed to provide medical assistance. (SMF ¶ 30). Rodriguez was not assigned to PA Wickham's patient load. (SMF ¶ 31). PA Wickham was not Rodriguez's primary care provider at any point while he was housed at USP-Allenwood. (SMF ¶ 32). PA Craig, not PA Wickham, was assigned to the SHU and was the primary care manager for Rodriguez from February 9, 2016 until Rodriguez transferred from USP-Allenwood on December 27, 2016. (SMF ¶ 33). PA Wickham covered the SHU while PA Craig was on annual leave. (SMF ¶ 36). Rodriguez contends that Defendant Wickham is a trained Physician Assistant, and should have cared for Rodriguez during PA Craig's absence. (Doc. 63 ¶ C).

PA Wickham is trained as a Psychiatric PA and is the primary care provider over both of USP-Allenwood's mental health units. (SMF ¶ 34).

The only medical interaction PA Wickham had with Rodriguez occurred prior to his November 4, 2106 carpal tunnel release surgery. (SMF ¶ 35). On July 8, 2016, PA Wickham performed an injury assessment on Rodriguez following exposure to smoke on the range. (SMF ¶ 37; Doc. 58-3, pp. 31-32). The medical records reflect that during this assessment, Rodriguez did not report any injuries or problems and made no mention of

8

anything related to his fingers, wrists, or hands. (SMF ¶ 38; Doc. 58-3, pp. 31-32). On October 20, 2016, PA Wickham evaluated Rodriguez after he complained of vomiting and epigastric burning related to gastroesophageal reflux disease. (SMF ¶ 39; Doc. 58-3, pp. 33-34). After the medical evaluation on October 20, 2016, PA Wickham prescribed Ranitidine, twice daily, for fourteen days. (SMF ¶ 40; Doc. 58-3, p. 34). PA Wickham also noted in his evaluation that Rodriguez had carpal tunnel syndrome. (SMF ¶ 41; Doc. 58-3, pp. 33-34).

PA Wickham never evaluated Rodriguez after his November 4, 2016 carpal tunnel syndrome surgery. (SMF ¶ 42). PA Wickham never reviewed Rodriguez's discharge instructions after his November 4, 2016 carpal tunnel syndrome surgery. (SMF ¶ 43). PA Wickham was not Rodriguez's primary care provider and was not tasked with a treatment plan, wound care, or pain medication. (SMF ¶ 44). At no point did Rodriguez ever request wound care or pain medication from PA Wickham following his November 4, 2016 carpal tunnel syndrome surgery. (SMF ¶ 45).

## E.     Facts regarding Exhaustion of the *Bivens* Claim

The Bureau of Prisons has an Administrative Remedy Program for inmates to resolve concerns related to their confinement, 28 C.F.R. § 541.10, *et seq.* (SMF ¶ 46; Doc. 58-3, pp. 13-15, Declaration of Jonathan Kerr ("Kerr Decl."), ¶ 3).

After his November 4, 2016 right carpal tunnel surgery, Rodriguez filed five

Administrative Remedies. (SMF ¶ 56). None of these Administrative Remedies relate to his right carpal tunnel surgery. (SMF ¶¶ 56, 57). Rodriguez never filed an Administrative Remedy, at any level, regarding his right wrist, carpal tunnel release surgery on his right wrist, or the related medical treatment. (SMF ¶ 57). Rodriguez contends that he attempted to informally resolve his problems with prison staff. (Doc. 63 ¶ D). He further contends that he requested informal resolution forms, but they were not provided to him. (Doc. 63 ¶ (D)(1)).

F.     **Facts regarding Rodriguez's filing of Administrative Tort Claims regarding carpal tunnel surgery on his right wrist and the related medical treatment**

The Federal Tort Claims Act provides that an action shall not be instituted against the United States unless the claimant shall have first presented the claim to the appropriate Federal agency, and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. (SMF ¶ 58) (citing 28 U.S.C. § 2675(a)). If final agency action is not taken within six months after the claim is filed, it shall be deemed a final denial. (SMF ¶ 59) (citing 28 U.S.C. § 2675(a)). A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after the claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. (SMF ¶ 60) (citing 28 U.S.C. § 2401(b)).

A review of the BOP Content Manager Administrative Tort system reveals that Rodriguez filed three administrative tort claims while incarcerated with the BOP. (SMF ¶ 61). All three of these claims pertained to personal property issues that were adjudicated pursuant to 31 U.S.C. § 3723. (SMF ¶ 62). Rodriguez never filed or presented in writing any administrative personal injury tort claim, any claim regarding right carpal tunnel surgery, pain medication, proper wound care, or anything related to the post-surgical treatment that he alleges resulted in hand and finger swelling. (SMF ¶ 63). Rodriguez contends that he never filed an administrative tort claim because the forms were not available in the SHU library. (Doc. 63 ¶ E).

## F. Facts surrounding Dr. Brian Buschman having absolute immunity within the scope of his employment as a Public Health Service Officer

Dr. Brian Buschman is commissioned as a Lieutenant Commander in the United States Public Health Service with a call to active duty date of September 4, 2015. (SMF ¶ 64). At all times relevant to this instant action, Dr. Buschman was employed as a Commissioned Corps Officer by the BOP at USP-Allenwood. (SMF ¶ 65). Rodriguez contends that Defendant Buschman is not statutorily immune from suit. (Doc. 63 ¶ F).

## G. Facts surrounding PA Charles Craig having absolute immunity within the scope of his employment as a Public Health Service Officer

PA Craig is commissioned as a Lieutenant Commander in the United States Public Health Service with a call to active duty date of November 14, 2008. (SMF ¶ 66). At all

11

times relevant to this instant action, PA Craig was employed as a Commissioned Corps Officer by the BOP at USP-Allenwood. (SMF ¶ 67). Rodriguez contends that Defendant Craig is not statutorily immune from suit. (Doc. 63 ¶ F).

## IV.  Discussion

Defendants argue that they are entitled to judgment in their favor on the following grounds: (1) Defendants are entitled to sovereign immunity for actions performed in their official capacities; (2) Rodriguez failed to exhaust his administrative remedies with respect to his *Bivens* claim; (3) Rodriguez failed to allege sufficient personal involvement of Defendants Magyar, Oddo, Potope, and Wickham, and respondeat superior cannot form the basis of a *Bivens* claim; (4) Rodriguez failed to make any specific allegations against Defendants Magyar, Oddo, Potope, and Wickham; (5) Defendants Buschman and Craig are entitled to absolute immunity arising out of the performance of medical or related functions; (6) Rodriguez failed to name the United States as a Defendant in the FTCA claim; (7) Rodriguez failed to exhaust any FTCA administrative tort claim before filing suit; and, (8) Rodriguez failed to file a certificate of merit as required by Pennsylvania law. (Doc. 58). The Court will first address Rodriguez's *Bivens* claim before turning to the FTCA claim.

### A.  *Bivens* Claim

#### 1.  *Official Capacity Claims*

Defendants argue that any claims seeking monetary damages against them in their

12

official capacities are barred by the Eleventh Amendment. (Doc. 58, pp. 18-20). Personal

capacity suits under section 1983 seek to recover money from a government official, as an

individual, for acts performed under color of state law. Official capacity suits, in contrast,

generally represent an action against an entity of which the government official is an agent.

*Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988); *see Monell v. Dep't of Soc. Servs.*, 436

U.S. 658, 690 n. 55 (1978). When suits are brought against state officials in their official

capacities, those lawsuits are treated as suits against the state. *Hafer v. Melo*, 502 U.S. 21,

25 (1991). However, the doctrine of sovereign immunity, established by the Eleventh

Amendment, protects states, such as the Commonwealth of Pennsylvania, from suits by

citizens. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-01, 117 (1984);

*Seminole Tribe v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252, 265

(1996); *Lavia v. Pennsylvania*, 224 F.3d 190, 195-96 (3d Cir. 2000). That immunity runs to

state officials if they are sued in their official capacity and the state is the real party upon

which liability is to be imposed. *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974).

Congress has not abrogated the immunity regarding Rodriguez's claims, nor has

Pennsylvania waived this grant of immunity. *See* 42 PA. STAT. ANN. AND CONS. STAT.

ANN. § 8521(b). Hence, Rodriguez's claims for money damages against the Defendants in

their official capacities are barred by sovereign immunity, and summary judgment will be

granted in favor of Defendants on this ground. *See Betts v. New Castle Youth Dev. Ctr.,*

13

621 F.3d 249, 254 (3d Cir. 2010).

## 2. *Exhaustion of the Bivens Claim*[4]

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required

to pursue all avenues of relief available within the prison's grievance system before bringing

a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth*

*v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the

requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such administrative remedies as are
> available are exhausted.

42 U.S.C. § 1997e(a). Rodriguez's *Bivens* claim falls within the ambit of the PLRA. *See*

*Nyhuis v. Reno*, 204 F.3d 65, 68 (3d Cir. 2000) ("[Section] 1997e(a) applies equally to §

1983 actions and to *Bivens* actions.").

The PLRA "exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has

been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482

F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding

---

[4]    The exhaustion procedures for BOP *Bivens* claims differ from those of the FTCA. Exhaustion
for *Bivens* purposes requires completion of the BOP's Administrative Remedy Program, whereas the
exhaustion procedures for administrative tort claims are set forth in the Federal Tort Claims Act.

that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis*, 204 F.3d at 67 (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)). To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

For federal prisoners, such as Rodriguez, the BOP has an administrative remedy procedure setting forth the necessary steps to exhaust a grievance pursuant to § 1997e(a). 28 C.F.R. § 542.10(a). Specifically, the BOP has a three-level administrative process through which an inmate can address issues concerning the conditions of his confinement. *See id.* An inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter. 28 C.F.R. § 542.13(a). If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the

warden, within twenty calendar days of the date of the incident. 28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days. 28 C.F.R. § 542.15(a). The inmate may then appeal to the BOP's Central Office within thirty calendar days, which office is the final administrative appeal level in the BOP. *Id.* No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel. 28 C.F.R. § 542.15(a). If an administrative remedy is rejected for a procedural deficiency, the remedy is returned to the inmate and the BOP provides the inmate with a written notice explaining the reason for the rejection. 28 C.F.R. § 541.17(b).

A declaration under penalty of perjury submitted by Jonathan Kerr, BOP Attorney, states that based on a review of the BOP's computerized records, Rodriguez filed twenty-two (22) administrative remedies during his incarceration with the BOP, but never filed any administrative remedies pertaining to the issues raised in the complaint. (Doc. 58-3, Kerr Decl. ¶¶ 2, 5; Doc. 58-3, pp. 16-27, Administrative Remedy Generalized Retrieval). Rodriguez does not dispute this fact. (Doc. 63 ¶ D). Accompanying Kerr's declaration are copies of the pertinent BOP administrative remedy records. (Doc. 58-3, pp. 16-27, Administrative Remedy Generalized Retrieval).

The undisputed evidence establishes that subsequent to Rodriguez's November 4, 2016 right carpal tunnel surgery, he filed five (5) administrative remedies, but never filed an

16

administrative remedy, at any level, regarding his right wrist, carpal tunnel release surgery, or related medical treatment. (*Id.*). Rodriguez has not provided any evidence to dispute these facts. Rodriguez admits that he did file any administrative remedies regarding any lack of medical care while housed at USP-Allenwood. (Doc. 63 ¶ D). He claims that he requested administrative remedy forms, but was not provided with the forms. (*Id.*). However, Rodriguez's ability to file several other administrative remedies during his incarceration with the BOP undermines any assertion that he was thwarted in his ability to file administrative remedies.

In certain circumstances, a prisoner may be excused from the exhaustion requirement. The Third Circuit recognizes a "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). An inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368. The Third Circuit has recently stated that the institution "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview*

*SCI*, 831 F.3d 148, 154 (3d Cir. 2016). In the present matter, Rodriguez failed to present any evidence that he was misled by prison officials, was impeded in filing a grievance, or that some other extraordinary circumstance prevented him from complying with the BOP grievance procedure.

A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *See Anderson*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986); *see also* FED. R. CIV. P. 56(c), (e). Rodriguez has failed to meet his burden with respect to exhaustion of his *Bivens* claim. Defendants are therefore entitled to an entry of summary judgment in their favor on the *Bivens* claim.

Therefore, as a threshold matter, Rodriguez's *Bivens* claim fails on administrative exhaustion grounds. Beyond this threshold concern, there are separate, and independent, substantive flaws with Rodriguez's claims against the Defendants. These deficiencies are discussed below.

### 3. Lack of Personal Involvement and Respondeat Superior with Respect to Defendants Magyar, Oddo, Potope, and Wickham

Defendants Magyar, Oddo, Potope, and Wickham argue that Rodriguez fails to state

a claim against them because they lack personal involvement in the alleged wrongs, and because the allegations against them are based solely on the doctrine of respondeat superior. (Doc. 58, pp. 20-22). The Court agrees.

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

It appears that Rodriguez attempts to hold Assistant Health Services Administrator Magyar, Warden Oddo, Health Services Administrator Potope, and Physician Assistant Wickham liable based on their supervisory roles. (*See* Doc. 1). However, it is

well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior. *See Rode*, 845 F.2d at 1207. Accordingly, Defendants Magyar, Oddo, Potope, and Wickham are entitled to judgment in their favor to the extent that Rodriguez's Eighth Amendment claim relies on a respondeat superior theory of liability.

### a. Defendant Magyar

Rodriguez alleges that Defendant Magyar violated his constitutional rights by removing him from medical hold which led to his transfer to USP-Coleman, even though he claimed a need of medical assistance. Rodriguez does not provide any evidence to support this contention. Moreover, Rodriguez does not provide any evidence that he sustained further injury during this transfer or that he did not receive proper medical treatment at USP-Coleman. Absent factual allegations that the Defendant knew the prisoner would sustain an injury exacerbating his existing medical condition upon his transfer or that the prison he was being transferred to was ill-equipped to treat his condition, the prisoner fails to state an Eighth Amendment claim. *McKethier v. Folino*, 540 F. App'x 76, 79 n. 5 (3d Cir. 2013) (per curiam) (rejecting an Eighth Amendment claim for transferring a chronically ill prisoner to another prison).

### b. Defendant Oddo

Rodriguez contends that he contacted Defendant Oddo on several occasions to

20

inform him that he was in need of medical care. (Doc. 63 ¶ (B)(1)). For purposes of Eighth

Amendment medical claims, nonmedical staff may not be "considered deliberately

indifferent simply because they failed to respond directly to the medical complaints of a

prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991

F.2d 64, 69 (3d Cir. 1993). The rationale for this rule has been aptly explained by the

United States Court of Appeals for the Third Circuit as follows:

> If a prisoner is under the care of medical experts . . . , a non-medical prison
> official will generally be justified in believing that the prisoner is in capable
> hands. This follows naturally from the division of labor within a prison.
> Inmate health and safety is promoted by dividing responsibility for various
> aspects of inmate life among guards, administrators, physicians, and so on.
> Holding a non-medical prison official liable in a case where a prisoner was
> under a physician's care would strain this division of labor. Moreover, under
> such a regime, nonmedical officials could even have a perverse incentive not
> to delegate treatment responsibility to the very physicians most likely to be
> able to help prisoners, for fear of vicarious liability. Accordingly, we conclude
> that, absent a reason to believe (or actual knowledge) that prison doctors or
> their assistants are mistreating (or not treating) a prisoner, a non-medical
> prison official . . . will not be chargeable with the Eighth Amendment scienter
> requirement of deliberate indifference.

*Spruill*, 372 F.3d at 236. Courts have repeatedly held that, absent some reason to believe

that prison medical staff are mistreating prisoners, non-medical corrections staff who refer

inmate medical complaints to physicians may not be held personally liable for

medically-based Eighth Amendment claims. *See, e.g., id.* at 236-37 (citing *Durmer*, 991

F.2d at 69); *Garvey v. Martinez*, No. 08- 2217, 2010 WL 569852, at *6-7 (M.D. Pa. 2010);

*Hodge v. United States*, No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa. 2007).

21

Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207.

With respect to the nonmedical Defendant, Oddo, Rodriguez fails to establish a viable claim. Defendant Oddo is the Warden of USP-Allenwood and is not a trained member of the medical staff subject to liability for an Eighth Amendment claim. Moreover, a review of the complaint confirms that there are no specific assertions that Defendant Oddo had any personal involvement in the purported violations of Rodriguez's rights under the Eighth Amendment. (*See generally* Doc. 1). Rodriguez has not presented any evidence that Defendant Oddo provided him with medical care, refused to provide medical care, or prevented him from receiving medical care; nor has Rodriguez presented any evidence that Defendant Oddo was aware of or acquiesced in purported Eighth Amendment violations. Because Rodriguez was under the regular care of medical experts, the nonmedical defendant was justified in believing that he was in capable hands. *See Spruill*, 372 F.3d at 236; *Durmer*, 991 F.2d at 69.

c.    Defendant Potope

Defendant Potope is the Health Services Administrator at USP-Allenwood and is responsible for supervising staff within the Health Services Department. (SMF ¶ 22). Defendant Potope's duties are limited to administrative functions and he does not provide

22

medical care. The uncontroverted evidence reflects that Defendant Potope was not involved in Rodriguez's medical care, did not have any involvement in Rodriguez's medical care, and was not involved in any attempts by Rodriguez to file administrative remedies. (SMF ¶¶ 26, 28). Rodriguez does not refute any of these arguments and does not present any evidence establishing Defendant Potope's personal involvement. Consequently, Defendant Potope is entitled to an entry of judgment in his favor based on lack of personal involvement.

### d. Defendant Wickham

Rodriguez contends that Defendant Wickham was responsible for providing medical care while PA Craig was on annual leave.

The record reflects that Defendant Wickham did not evaluate Rodriguez at any time after his carpal tunnel surgery on November 4, 2016, nor did Rodriguez request evaluation by Defendant Wickham. (SMF ¶¶ 42, 45). The record further reflects that Rodriguez was not assigned to Defendant Wickham's patient load, and Defendant Wickham was not Rodriguez's primary care provider. (SMF ¶¶ 31, 32).

The medical records reveal that Defendant Wickham treated Rodriguez on July 8, 2016 and October 20, 2016, prior to his November 4, 2106 carpal tunnel release surgery. (SMF ¶¶ 35-39). On July 8, 2016, Defendant Wickham performed an injury assessment on Rodriguez following exposure to smoke on the range. (SMF ¶ 37; Doc. 58-3, pp. 31-32).

During this assessment, Rodriguez did not report any injuries or problems, and did not report any problems with his fingers, wrists, or hands. (SMF ¶ 38; Doc. 58-3, pp. 31-32). On October 20, 2016, Defendant Wickham evaluated Rodriguez for complaints related to gastroesophageal reflux disease. (SMF ¶ 39; Doc. 58-3, pp. 33-34). Defendant Wickham treated Rodriguez and prescribed medication for gastroesophageal reflux disease. (SMF ¶ 40; Doc. 58-3, p. 34). Defendant Wickham also noted that Rodriguez had carpal tunnel syndrome. (SMF ¶ 41; Doc. 58-3, pp. 33-34).

The uncontroverted evidence establishes that Defendant Wickham never evaluated Rodriguez after his November 4, 2016 carpal tunnel syndrome surgery. (SMF ¶ 42). Rodriguez has failed to submit "affirmative evidence, beyond the allegations of the pleadings," in support of his claim against Defendant Wickham right to relief. *Pappas*, 331 F. Supp. 2d at 315; FED. R. CIV. P. 56(e). As such, Defendant Wickham is entitled to an entry of judgment in his favor.

### 4. Dr. Buschman and PA Craig Have Statutory Immunity under the Public Health Service Act

The Public Health Service Act, 42 U.S.C. § 233(a), provides that an action against the United States under the FTCA is the exclusive remedy "for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or

employment." 42 U.S.C. § 233(a). As such, the Public Health Service Act grants absolute immunity to Public Health Service officers from *Bivens* actions "arising out of the performance of medical or related functions within the scope of their employment." *Hui v. Castaneda*, 559 U.S. 799, 806, 130 S.Ct. 1845, 1851, 176 L.Ed.2d 703 (2010); *see also Etkins v. Glenn*, 519 F. App'x 111 (3d Cir. 2013) (nonprecedential) (affirming district court's denial of a motion to add Public Health Service employee as additional defendant because she is entitled to absolute immunity from *Bivens* claims).

Rodriguez asserts that Dr. Buschman and PA Craig violated his constitutional rights under the Eighth Amendment when they ignored his requests for medical care while housed in the SHU. (Doc. 1; Doc. 63, p. 7). Rodriguez argues that they are not not entitled to immunity. (*Id.*). However, it is undisputed that Dr. Buschman and PA Craig are Lieutenant Commanders with the Public Health Service, and were acting within the scope of their official duties when they were dealing with Rodriguez. Thus, Rodriguez cannot maintain a *Bivens* action against Dr. Buschman and PA Craig, Public Health Service employees, for harm arising out of alleged constitutional violations committed while acting within the scope of their employment. Accordingly, Dr. Buschman and PA Craig are entitled to judgment in their favor as to Rodriguez's *Bivens* claims against them.

B.   FTCA Claim

1.   *Proper Defendant under the FTCA*

25

Defendants argue that the only proper Defendant under the FTCA is the United

States, and because Rodriguez failed to name the United States as a Defendant, any FTCA

claim fails. (Doc. 58, p. 27, n. 2). The Court agrees. The only proper Defendant to a claim

under the FTCA is the United States. *See* 28 U.S.C. § 2679(d); *CNA v. United States*, 535

F.3d 132, 138 n. 2 (3d Cir. 2008) ("The Government is the only proper defendant in a case

brought under the FTCA."). As such, Rodriguez cannot maintain a FTCA claim against the

named Defendants.

## 2. Exhaustion of the FTCA Claim

Even if Rodriguez had properly named the United States as a Defendant in this

action, any FTCA claim would fail because Rodriguez failed to exhaust any administrative

tort claims.

The FTCA allows federal prisoners to pursue lawsuits against the United States in an

effort to recover for personal injuries sustained during confinement by reason of negligence

of government employees. *See Berman v. United States*, 205 F. Supp. 2d 362 (M.D. Pa.

2002) (citing *United States v. Muniz*, 374 U.S. 150 (1963); 28 U.S.C. §1346(b)). The

primary purpose of the FTCA is to "remove sovereign immunity of the United States from

suits in tort, and with certain specific exceptions, to render the Government liable in tort as a

private individual would be under like circumstances." *Id.* (quoting *Richards v. United

States*, 369 U.S. 1, 6 (1962); 28 U.S.C. § 1346(b)).

26

As a prerequisite to suit under the FTCA, a claim must first be presented to the
federal agency and be denied by the agency. The FTCA provides:

> An action shall not be instituted against the United States for money damages
> for injury or loss of property or personal injury . . . unless the claimant shall
> have first presented the claim to the appropriate Federal agency and his claim
> shall have been finally denied by the agency in writing and sent by certified or
> registered mail.

28 U.S.C. § 2675(a). Thus, prior to commencing an FTCA action against the United States

in federal court, a plaintiff must "first present[ ] the claim to the appropriate Federal agency"

and receive a final denial "by the agency in writing and sent by certified or registered mail."

28 U.S.C. § 2675(a). "The statutory language is clear that a court does not have jurisdiction

before administrative remedies have been exhausted, and a court must dismiss any action

that is initiated prematurely." *Wilder v. Luzinski*, 123 F. Supp. 2d 312, 313 (E.D. Pa. 2000)

(citing *McNeil v. United States*, 508 U.S. 106, (1993); *Wujick v. Dale & Dale*, 43 F.3d 790,

793-94 (3d Cir. 1994)).

Moreover, a claimant must abide by the strict time requisites codified in 28 U.S.C. §

2401(b) or its tort claim under the FTCA will be "forever barred."[5] *See Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971). To sue the United States in district court and avoid violating the FTCA's express statute of limitations, a plaintiff must present the tort claim "in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b); *see also Bialowas*, 443 F.2d at 1049. Section 2401's "time bar is strictly construed." *Brown v. Camden County Counsel*, 2010 U.S. App. LEXIS 9826, *6 (3d Cir. 2010) (citing *Livera v. First Nat. State Bank of N.J.*, 879 F.2d 1186, 1195 (3d Cir. 1989)).

In the instant action, the undisputed evidence establishes that Rodriguez never filed any administrative personal injury tort claim, any claim regarding right carpal tunnel surgery, pain medication, proper wound care, or anything related to his post-surgery treatment. *See Abulkhair v. Bush*, 413 F. App'x 502, 506 (3d Cir. 2010) (dismissing FTCA claim for failure to exhaust administrative remedies  before filing suit); *Accolla v. United States*, 369 F. App'x 408, 409-10 (3d Cir. 2010) (finding that the district court properly dismissed FTCA claim

---

[5]   Title 28 United States Code section 2401(b) provides:

[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

where the plaintiff filed federal suit prior to exhausting administrative remedies). As is

apparent from the record before the Court, Rodriguez failed to exhaust his administrative

tort claims prior to filing this lawsuit. Therefore, Defendants are entitled to judgment in their

favor on the FTCA claim. *See McNeil v. United States*, 508 U.S. 106, 111-12, 113 S.Ct.

1980 (1996) (holding that a court is without jurisdiction to rule on a prematurely filed FTCA

action even if an agency denies the related administrative claim soon after the federal

lawsuit is filed); *Accolla*, 369 F. App'x 408.

### 3. Certificate of Merit

Defendants also argue that if this Court does not grant summary judgment on the

FTCA medical negligence claim for failure to exhaust, it should be dismissed because

Rodriguez failed to file the requisite certificate of merit. (Doc. 58, pp. 30-31).

A federal district court addressing an FTCA action must apply the law of the state, in

this case Pennsylvania, in which the alleged tortious conduct occurred. In order to present

a *prima facie* case of medical malpractice/negligence under Pennsylvania state law, a

plaintiff has the burden of presenting expert testimony by an appropriate licensed

professional who can testify to a reasonable degree of medical certainty that the actions or

omissions of the defendant deviated from acceptable medical standards, and that said

deviation constituted a substantial factor in causing the Plaintiff's injury. *Simpson v. Bureau

of Prisons*, 2005 WL 2387631, *5 (M.D. Pa. Sept. 28, 2005).

Pennsylvania Rule of Civil Procedure Rule 1042.3 provides, in pertinent part:

In any action based upon an allegation that a licensed professional deviated
from an acceptable professional standard, the attorney for the plaintiff, or the
plaintiff if not represented, shall file with the complaint or within sixty days
after the filing of the complaint, a certificate of merit signed by the attorney or
party that either

(1) an appropriate licensed professional has supplied a written
statement that there exists a reasonable probability that the
care, skill or knowledge exercised or exhibited in the treatment,
practice or work that is the subject of the complaint, fell outside
acceptable professional standards and that such conduct was a
cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable
professional standard is based solely on allegations that other
licensed professionals for whom this defendant is responsible
deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is
unnecessary for prosecution of the claim.

* * *

(d) The court, upon good cause shown, shall extend the time for filing a
certificate of merit for a period not to exceed sixty days. A motion to extend
the time for filing a certificate of merit must be filed by the thirtieth day after
the filing of a notice of intention to enter judgment of non pros on a
professional liability claim under Rule 1042.6(a) or on or before the expiration
of the extended time where a court has granted a motion to extend the time to
file a certificate of merit, whichever is greater. The filing of a motion to extend
tolls the time period within which a certificate of merit must be filed until the
court rules upon the motion.

PA. R. CIV. P. 1042.3(a), (d). The purpose of the required certificate of merit is to "assure

that malpractice claims for which there is no expert support will be terminated at an early

stage in the proceedings." *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000).

Rule 1042.3(a) applies to both *pro se* and represented plaintiffs and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. *See Iwanejko v. Cohen & Grigsby, P. C.*, 249 F. App'x 938, 944 (3d Cir. 2007) (holding that district courts must "appl[y] Rule 1042.3 as substantive state law"); *Paige v. Holtzapple*, 2009 WL 2588849, *3 (M.D. Pa. 2009) (*citing Iwanejko*, 249 F. App'x at 944); *Fernandez v. Dep't of Justice*, No. 3:07-cv-1080, slip op. at 10 (M.D. Pa. Sept. 2, 2008) (recognizing that the plaintiff's *pro se* status "is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of com[i]ng forth with expert medical testimony"). Failure to file a certificate of merit under Rule 1042.3(a) or a motion for an extension under Rule 1042.3(d) is fatal unless the plaintiff demonstrates that his failure to comply is justified by a "reasonable excuse." *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008); *see also Walsh v. Consol. Design & Eng'g, Inc.*, 2007 WL 2844829, *5 (E.D. Pa. 2007) ("Rule 1042.3 is subject to equitable considerations and a party who fails to timely file a certificate of merit may be relieved from the requirement where the defaulting party provides a reasonable explanation or legitimate excuse.").

In the instant case, Rodriguez has not submitted a proper Rule 1042.3 certificate of merit or otherwise indicated that he has retained an expert witness, nor has he requested an extension of time in which to do so. Furthermore, Rodriguez has failed to present a

reasonable explanation or legitimate excuse for noncompliance with the certificate of merit requirement. Consequently, the Court will grant Defendants' motion in this regard.

## V. **Conclusion**

Based on the foregoing, Defendants' motion (Doc. 49) for summary judgment will be granted. A separate Order shall issue.

Date: March __12__, 2019

Robert D. Mariani
United States District Judge